UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH
CIVIL ACTION NO. 5:16-CV-130-TBR

CAROLYN WEBB,                                                                                PLAINTIFF

v.

PADUCAH BOARD OF EDUCATION, *et al.*,                                      DEFENDANTS

**MEMORANDUM OPINION**

This matter is before the Court on Defendants Paducah Board of Education, Superintendent Donald Shively, and Paducah Public School Transportation's ("Defendants") Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56, [R. 16]. Plaintiff Carolyn Webb responded, [R. 24], and Defendants replied, [R. 27]. Fully briefed, this matter is now ripe for adjudication. For the reasons stated herein, Defendants' Motion for Summary Judgment, [R. 16], is **GRANTED**.

**BACKGROUND**

This case arises out of Plaintiff Carolyn Webb's employment with the Paducah Board of Education ("the Board"). In 2011, she was initially hired as a substitute bus driver, and then, effective December 5, 2011, she became a regular bus driver. [R. 28 at 27 (102:14-103:20) (Webb Depo.).] Pursuant to a series of one-year employment contracts, Webb was employed by the Board until May 15, 2015 when she received a letter from Superintendent Donald Shively, [R. 28-8], stating that her contract would not be renewed for the following year. [R. 28 at 20-21 (74:3-77:12).]

Webb alleges that the non-renewal of her contract stemmed from an altercation that occurred between herself and her supervisor, Steven Spraggs, over her request for a day off from work in order to attend her grandson's high school graduation. [*Id.* at 6 (21:2-16).] Webb initially

1

requested the day off on April 15, 2015, to which Spraggs responded that he could not guarantee that day off because it was during the last week of school.[1] [*Id*. (21:10-14).] Later, Spraggs denied her request via text message. [*Id*. at 7 (22:15-22).] Interpreting this initial denial to not be definite, Webb entered a request for leave for the same date on AESOP, an electronic human resources portal, which Spraggs denied on April 29, 2015. [*Id*. (23:11-24:19)]; R. 28-5 (AESOP Absence Approval Status).] Subsequently, during Webb's yearly evaluation, Webb again asked Spraggs for the day off. [R. 28 at 8 (29:5-12).] Webb testified that Spraggs instructed her to ask his supervisor, Troy Brock. [*Id*.] Webb states that she then called Brock, and, after discovering that she had the wrong date for the graduation, discussed the proper date she would need off in order to attend the graduation. [*Id*. at 8-9 (29:17-31:8).] Afterwards, Webb texted Spraggs to apologize for giving him the wrong date, and Spraggs told her to come to his office later to discuss her request. [*Id*. at 10 (34:21-36:4).]

On May 14, 2015, Webb went to Spraggs's office where the following incident ensued. Webb recounts that Spraggs accused her of "going over his head" by calling Brock to request off for the graduation. [*Id*. at 13 (46:9-47:25).] Webb denied this accusation, recalling that Spraggs instructed her to call Brock. [*Id*.] Webb states that Spraggs was very upset, told her "I'm not going to give you nothing," stood up, slammed his chair into the desk, and stepped around the desk toward Webb. [*Id*. (48:9-22).] Webb remembers that this caused her to feel frightened of Spraggs so she immediately left the office. [*Id*.] Furthermore, Webb states that by being so aggressive, Spraggs was effectively "bullying, intimidating, and humiliating" her. [Id. (49:6-14).] Spraggs remembers this incident differently. In his declaration, Spraggs stated that after he

---

[1] Spraggs stated in his declaration: "I routinely enforce a policy in the transportation department that drivers are not to take personal leave during the last week of school, as it is a hectic time for the department, requiring all experienced drivers to drive that week." [R. 16-2 at 3 (Spraggs Dec.).]

informed Webb that her request was denied, "she became extremely belligerent and accused [him] of being unreasonable" and "left [his] office in anger." [R. 16-2 at 3.]

On May 15, 2015, Webb met with Spraggs, a representative of the Kentucky Education Association (KEA), and Will Black, the Assistant Superintendent, where she received the letter stating that her employment contract would not be renewed for the following year. [R. 28 at 20 (74:3-77:8).] Subsequently, Webb completed the term of her contract, ending June 30, 2015, [*Id.* at 22 (83:18-23).], and began working at PATS transportation, [*Id.* at 25 (95:17-96:8)].

On July 20, 2016, Webb filed a pro se complaint in McCracken Circuit Court, and it was removed to this Court on August 11, 2016. On May 25, 2017, Defendants filed the Motion for Summary Judgment that is currently before the Court.

**STANDARD**

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court "may not make credibility determinations nor weigh the evidence when determining whether an issue of fact remains for trial." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001); *Ahlers v. Schebil*, 188 F.3d 365, 369 (6th Cir. 1999)). "The ultimate question is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Back v. Nestlé USA, Inc.*, 694 F.3d 571, 575 (6th Cir. 2012) (quoting *Anderson*, 477 U.S. at 251–52).

As the party moving for summary judgment, Defendants must shoulder the burden of showing the absence of a genuine dispute of material fact as to at least one essential element of Webb's claims. Fed. R. Civ. P. 56(c); *see also Laster*, 746 F.3d at 726 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). Assuming Defendants satisfy their burden of production, Webb "must—by deposition, answers to interrogatories, affidavits, and admissions on file—show specific facts that reveal a genuine issue for trial." *Laster*, 746 F.3d at 726 (citing *Celotex Corp.*, 477 U.S. at 324).

**DISCUSSION**

Webb alleges various claims against Defendants: (1) wrongful discharge due to race discrimination; (2) hostile work environment based on race discrimination; (3) retaliation; and (4) age discrimination under the ADEA. [*See* R. 24 at 1 (Webb Response).] The Court will address each claim in turn.

I.  **Wrongful Discharge due to Race Discrimination**

Title VII, 42 U.S.C. § 2000e-2(a)(1), makes it an unlawful employment practice "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . .." 42 U.S.C. § 2000e-2(a)(1). In a disparate treatment case, such as the one at hand, "the plaintiff must establish that the adverse employment action was motivated, in part, by the plaintiff's protected-group status." *Lewis-Smith v. W. Kentucky Univ.*, 85 F. Supp. 3d 885, 897 (W.D. Ky. 2015), aff'd (Jan. 12, 2016) (McKinley, J.). The employer does not violate Title VII unless there is a discriminatory basis. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 514 (1993) ("We have no authority to impose liability upon an employer for alleged discriminatory employment practices unless an

appropriate factfinder determines, according to proper procedures, *that the employer has unlawfully discriminated.*").

When the plaintiff fails to present direct evidence of discrimination, as is the case here,[2] courts analyze Title VII disparate treatment claims under the *McDonell Douglas* framework. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973). Under that framework, the burden initially lies with the plaintiff to establish a prima facie case of discrimination. *See id*. This is established by showing that (1) plaintiff is a member of a protected group, (2) plaintiff was subject to an adverse employment decision, (3) plaintiff was qualified for the position, and (4) plaintiff was either replaced by a person outside of the protected class or was treated differently than similarly situated, non-protected employees. *Russell v. Univ. of Toledo*, 537 F.3d 596, 604 (6th Cir.2008). If the plaintiff establishes a prima facie case of discrimination, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its action. Assuming it does so, the burden shifts back to the plaintiff to demonstrate the defendant's proffered reason is merely pretext for unlawful discrimination. *See McDonnell Douglas Corp.*, 411 U.S. at 802; *Hollins v. Atl. Co.*, 188 F.3d 652, 658 (6th Cir. 1999).

In Webb's Complaint, [R. 1-1], she alleges her claims under Title VII. However, in her Response, she cites to Kentucky state law.[3] [*See* R. 24 at 4.] The Court finds this to be of no consequence as courts interpret Title VII and the Kentucky Civil Rights Act ("KCRA") using the same standards. *Smith v. Leggett Wire Co.*, 220 F.3d 752, 758 (6th Cir. 2000) ("Because Ky. Rev. St. Chapter 344 mirrors Title VII of the Civil Rights Act of 1964 ("Title VII"), we use the

---

[2] As Webb has not submitted direct evidence of discriminatory intent, the Court only engages in the *McDonnell Douglas* burden shifting analysis. Furthermore, Webb does not dispute Defendants' recitation of the *McDonnell Douglas* factors, and cites the same factors of discrimination as stated in the context of Kentucky state law in her Response to the Motion for Summary Judgment. [*See* R. 24 at 4.]

[3] Specifically, Webb cites to the Western District of Kentucky's treatment of state law in *MacGlashan v. ABS Ky. Inc.*, 84 F. Supp. 3d 595, 599 (2015).

federal standards for evaluating race discrimination claims."). Furthermore, the portion of the case cited by Webb pertains specifically to a retaliation claim, not a wrongful discharge claim.

Webb alleges that she was wrongfully discharged due to racial discrimination when Defendants did not renew her contract for the following year as a bus driver. [R. 1-1 at 2-4.] Defendants concede that Webb established the first three elements of a prima facie case of discrimination: (1) she is a member of a protected group as an African American; (2) she was subject to an adverse employment decision when her employment contract was not renewed; and (3) she was qualified for her employment position. [R. 16-1 at 10.] This leaves at issue the fourth prong of a prima facie case of discrimination: plaintiff was either replaced by a person outside of the protected class or was treated differently than similarly situated, non-protected employees. *See Russell*, 537 F.3d at 604. As to the first requirement of this prong, Webb does not allege that she was replaced by someone outside of the protected class. In fact, Spraggs stated that Webb was replaced by a 45-year old African American female. [R. 16-2 at 4 (Spraggs Declaration).] Therefore, this issue will depend solely on whether Webb was treated differently than similarly situated, non-protected employees. *See Dickens v. Interstate Brands Corp.*, 384 F. App'x 465, 468–69 (6th Cir. 2010) (finding that "the parties' dispute as to the presence of a prima facie case turns solely on whether Dickens was treated differently than similarly situated employees" when the plaintiff did not demonstrate he was replaced by a person outside of his protected class).

Webb testified about two incidents, other than the altercation in Spraggs's office, involving this sort of treatment: one incident in which she was treated differently than another bus driver who was not a member of her protected class, [R. 28 at 22-23], and a second incident in which a Caucasian co-worker was given a new bus before a more senior, African American co-worker, [*Id*.]. According to Webb's testimony concerning the first incident, during the spring

6

or summer of 2013 or 2014, Spraggs gave additional trips to a Caucasian bus driver, "David," even though he was below Webb in seniority. [*Id*. (85:11-88:20).] Although Webb was told additional employment would be assigned according to seniority for different trips, such as camps, David was assigned these trips instead of Webb. [*Id*.] In opposition to this claim, Defendants argue that Webb offers no proof as to whether "David" was a member of a protected class. [R. 16-1 at 12-13.] Also, Defendants assert that a cause of action based on this incident is time barred because Webb "failed to file a charge with the EEOC asserting such discrimination and so may not pursue it here." [*Id*. at 13.]

In regards to Defendants' argument that Webb's claim is time barred, the Supreme Court has stated that an employee is not barred "from using the prior acts as background evidence in support of a timely claim." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). Thus, Webb could use the incident with David as "background evidence." However, the Court finds that this incident does not support Webb's current claim of wrongful discharge because it had nothing to do with Webb's employment being discontinued. In order for this incident to prove helpful to Webb's current claim of wrongful discharge, Webb would have to prove that David engaged in the same type of alleged behavior as Webb, i.e., insubordination and conflicts with co-workers and supervisors, yet his contract for employment was still continued for another year. *See Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 348 (6th Cir. 2012) ("To satisfy this element, Chattman bears the burden of proving that white employees, 'similar in all of the *relevant* aspects' of employment, were not similarly disciplined.") (citation omitted); *Franklin v. Davita Healthcare Partners, Inc.*, No. 13-11329, 2014 WL 6886306, at *6 (E.D. Mich. Dec. 4, 2014) ("Thus, plaintiff must compare herself to a male employee who reported to the same

supervisor, who engaged in the same type of conduct, and who was not terminated. Plaintiff has not done so.").

With respect to the second incident, Webb testified that Spraggs assigned a new bus to a Caucasian co-worker, Lynda Lyles, instead of an African American co-worker, Gary White— despite White's seniority over Lyles. [R. 28 at 23 (88:21-89:22).] As Defendants point out, this incident does not aid Webb's current claim as she suffered no injury because of this alleged discriminatory treatment. Indeed, this incident would support Webb's claim if she was the victim of an adverse action due to her association with White, but that is not what happened here. *See Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 574 (6th Cir. 2000) ("Simply put, this Court has now spoken that in order to state a cognizable claim under Title VII, the plaintiff himself need not be a member of a recognized protected class; he need only allege that he was discriminated on the basis of his association with a member of a recognized protected class."); *see also Bert v. AK Steel Corp.*, No. 1:02-CV-467, 2008 WL 2002848, at *3 (S.D. Ohio May 7, 2008) (holding that the Caucasian plaintiff did not establish an "actual, compensable injury" when he argued that "there 'should have been more' African Americans hired because the workplace lacked 'balance.'").

In sum, the Court finds that Webb has failed to establish a prima facie case of racial discrimination as it pertains to the termination of her employment.

## II. Hostile Work Environment

"To establish a hostile work environment claim under Title VII, plaintiffs must prove that: (1) they were members of a protected class; (2) they were subjected to unwelcome harassment; (3) the harassment was based on plaintiffs' protected status; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known about the harassing conduct but failed to take corrective or preventative actions."

*Bailey v. USF Holland, Inc.*, 526 F.3d 880, 885 (6th Cir. 2008) (citing *Michael v. Caterpillar Fin. Serv. Corp.*, 496 F.3d 584, 600 (6th Cir. 2007)). Defendants specifically argue that Webb failed to establish the third and fourth prongs. The Court agrees.

First, Webb has not established the third prong: that Spraggs behavior toward her was based on her race. Webb states that Spraggs bullied, intimidated, and humiliated her as an African American employee, but produces no evidence that his behavior was based on her race. Her testimony suggests that Spraggs's treatment of Webb in his office on May 14, 2015 was due to anger over her "going over his head" to his boss in order to ask for a day off. [R. 1-1 at 3.] Granted, this sort of behavior is inappropriate. However, Webb did not produce any evidence suggesting that his actions were based on her protected status. Similarly, in a case involving alleged gender discrimination, the Sixth Circuit affirmed the dismissal of the plaintiff's claims, stating: "While [plaintiff] may have been subject to intimidation, ridicule, and mistreatment, he has not shown that he was treated in a discriminatory manner because of his gender*.*" *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 464 (6th Cir. 2000); *see also Lewis-Smith*, 85 F. Supp. 3d at 902–03 ("Slamming his door on her, being rude to her, not valuing her contributions, and being dismissive of her comments and concerns may have been rude, uncomfortable, or inappropriate, but it is not indicative of racial hostility towards African Americans."). Thus, without evidence that Spraggs's behavior was based on racial discrimination, Webb fails to establish the third prong of a prima facie case of hostile work environment.

Secondly, Webb also failed to establish the fourth prong: the harassment affected a term, condition, or privilege of employment. The harassment in question meets the standard of this fourth prong if it is "sufficient to show that the alleged conduct constituted an unreasonably abusive or offensive work-related environment or adversely affected the employee's ability to do

9

his or her job." *Moore v. KUKA Welding Sys. & Robot Corp.*, 171 F.3d 1073, 1079 (6th Cir. 1999). "This analysis contains an objective and a subjective component. The environment must be of the sort that 'a reasonable person would find hostile or abusive,' and the plaintiffs themselves must 'subjectively perceive the environment to be abusive.'" *Bailey*, 526 F.3d at 886 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). "To determine whether an environment is sufficiently hostile or abusive, a court must consider 'all of the circumstances,' including the 'frequency of the discriminatory conduct, its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Lindsey v. Whirlpool Corp.*, 295 F. App'x 758, 766 (6th Cir. 2008) (quoting *Harris*, 510 U.S. at 23). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

Webb does not specifically address the standards laid out in this case law; however, she recounts a few incidents in which she was offended by Spraggs's behavior toward her. The main example is Spraggs's aggressive actions in his office on May 15, 2017, but Webb also mentions an incident where Spraggs instructed her to drive a bus in an unsafe manner in the dark, [R. 24 at 5], and another incident in which Spraggs referred to Webb as "Ms. Tardy" in front of other staff, [*Id.*]. These events do not amount to an unreasonably abusive or offensive work-related environment. In comparison, in *Bailey v. Holland*, the Sixth Circuit found that the African American plaintiffs established that their employment environment as dock workers and truck drivers at USF Holland, Inc. was objectively and subjectively hostile when the work environment included "nooses, offensive flyers, 'boy' graffiti, and other frankly racist behavior." 526 F.3d at 886. In contrast to *Bailey*, in *Lindsey v. Whirlpool Corporation*, the Sixth Circuit

10

held that even though the African American, female plaintiff endured certain incidents—such as a co-worker pretending to whip her with a string "like a slave" and comments like "[W]hy do you have a black purse, why don't you have a white purse?"—she still failed to produce evidence showing that the incidents "affected a term, condition, or privilege of her employment." 295 F. App'x at 766. Furthermore, the Sixth Circuit stated that "these racial comments, while certainly unacceptable, appear to be isolated incidents which are not, in themselves, severe and pervasive enough to constitute a hostile working environment." *Id*. Beyond an absence of any sort of direct, racial comment toward Webb, she does not provide any evidence that the few, isolated incidents she describes changed the terms and conditions of her employment. Thus, Webb has failed to establish the fourth prong of a prima facie case of hostile work environment.

In sum, the Court finds that Webb has failed to establish a prima facie case of hostile work environment.

### III. Retaliation

"Title VII prohibits discriminating against an employee because that employee has engaged in conduct protected by Title VII. The opposition clause of Title VII makes it "unlawful . . . for an employer to discriminate against any . . . employe[e] . . . because he has opposed any practice made . . . unlawful . . . by this subchapter." *Laster v. City of Kalamazoo*, 746 F.3d 714, 729 (6th Cir. 2014) (quoting 42 U.S.C. § 2000e–3(a)). The opposition clause protects not only the filing of formal discrimination charges with the EEOC, but also complaints to management and less formal protests of discriminatory employment practices. *Id*. (citing *Trujillo v. Henniges Auto. Sealing Sys. N. Am., Inc.*, 495 F. App'x 651, 655 (6th Cir. 2012). To establish a prima facie case of retaliation, the plaintiff must prove: "(1) she engaged in activity protected by Title VII; (2) this exercise of protected rights was known to defendant; (3) defendant thereafter took adverse employment action against the plaintiff, *or the plaintiff was subjected to severe or*

11

*pervasive retaliatory harassment by a supervisor*; and (4) there was a causal connection between the protected activity and the adverse employment action *or harassment*." *Morris v. Oldham Cty. Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000). Although she never specifically mentions the term "retaliation," Webb's Response seems to address the retaliation claim by using the terms "protected activity" and "adverse action" in the following portion:

> Plaintiff is a [sic] African American Female over fifty (50) years of age and engaged in her employment therein and attempted to reasonably take time off by engaging efforts that was [sic] suggested by Mr. Spraggs making such as a protected activity. Mr. Spraggs not only knew of such but suggested her to take her efforts. Mr. Spraggs then took the adverse action of insisting that Plaintiff come to see him in his office wherein he engaged in verbally and physical actions that scared and adversely affected Plaintiff and made her feel afraid by saying the actions she undertook was [sic] "over his head."

[R. 24 at 4-5.] Defendants argue that Webb failed to establish the first and fourth prong of a prima facie case of retaliation. [R. 16-1 at 17-18.] The Court agrees.

Under the first prong, Webb has failed to establish that she engaged in an activity protected by Title VII. "Under Title VII, there are two types of protected activity: participation in a proceeding with the Equal Employment Opportunity Commission ("EEOC") and opposition to an apparent Title VII violation." *Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 469 (6th Cir. 2012) (quoting *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1313 (6th Cir. 1989)); *see also Yazdian v. ConMed Endoscopic Techs., Inc.,* 793 F.3d 634, 646 (6th Cir. 2015) (holding that plaintiff's comments to employer, such as "I'm going to respond with counsel," "I will have an attorney respond," "Hostile work environment", etc., put his employer on notice that the plaintiff believed his manager's conduct was illegal). As Defendants points out, Webb did

not pursue this action for discrimination until after her contract was not renewed. Therefore, the termination of employment was not due to her participation in a proceeding with the EEOC.[4]

This leaves the second type of protected activity, "opposition to an apparent Title VII violation." *Wasek*, 682 F.3d at 469. "The Equal Employment Opportunity Commission ("EEOC") has identified a number of examples of 'opposing' conduct which is protected by Title VII, including complaining to anyone (management, unions, other employees, or newspapers) about allegedly unlawful practices; refusing to obey an order because the worker thinks it is unlawful under Title VII; and opposing unlawful acts by persons other than the employer—e.g., former employers, union, and co-workers." *Johnson*, 215 F.3d at 579 (citing *EEOC Compliance Manual,* (CCH) ¶ 8006.). Webb fails to allege any sort of opposition to an apparent Title VII violation. In her Response, Webb seems to imply that requesting time off is a protected activity, but she provides no case law in support of this implication. [R. 24 at 4-5.] Nor can the Court find such case law. Thus, the Court finds that Webb requesting a day off from work does not qualify as a protected activity as required in a Title VII retaliation claim, and she has failed to establish the first prong of a prima facie case of retaliation.

Webb also failed to establish the fourth prong: "there was a causal connection between the protected activity and the adverse employment action *or harassment.*" *Morris*, 201 F.3d at 792. The Court already found that Webb failed to establish that she engaged in protected activity. However, even if asking for time off was a protected activity, Webb has not demonstrated that this was the reason why her contract was not renewed. Webb only provides vague arguments, such as "I was discharged due to my race . . ..", [R. 1-1 at 2], and "the retaliation and wrongful discharge is the result of all of the above information," [R. 24 at 6]. There is simply not enough

---

[4] The Court notes that Webb never alleged that the non-renewal of her employment contract was due to her participation in a proceeding with the EEOC.

evidence to tie her loss of employment with any sort of claim of protected activity. Therefore, Webb failed to establish the fourth prong.

In sum, Webb has failed to establish a prima facie claim of retaliation.

### IV. Age Discrimination

Age discrimination cases under the ADEA are analyzed under the same framework as employment discrimination cases under Title VII. *Grosjean v. First Energy Corp.*, 349 F.3d 332, 335 (6th Cir. 2003) (citing *Policastro v. Northwest Airlines, Inc.*, 297 F.3d 535, 538 (6th Cir.2002)).[5] Here, Defendants specifically argue that Webb has not established the fourth factor: that she was replaced by someone outside of her protected class. "In age discrimination cases, the protected class includes all workers at least 40 years old and the fourth element is modified to require replacement not by a person outside the protected class, but merely replacement by a significantly younger person." *Grosjean*, 349 F.3d at 335 (citing *Kline*, 128 F.3d at 352-53). Defendants argue that the age difference of eight years between Webb and her replacement is not sufficient to satisfy this fourth prong.[6] The precedent of this Court sides with Defendants.

In *Scola v. Publix Supermarkets, Inc.*, the Sixth Circuit acknowledged a gray area in the law in which "replacement of the employee by a person who is six to ten years her junior must be considered on a case-by-case basis." 557 F. App'x 458, 467 (6th Cir. 2014) (quoting *Blizzard v. Marion Technical Coll.*, 698 F.3d 275, 284 (6th Cir. 2012)). There, the court found that a seven year age difference along with no "direct evidence of age animus" did not result in a prima facie case of age discrimination. *Id*. Similarly, this Court held in *Harman v. Western Baptist Hospital* that an age difference of eight years and eight months, without more, was not

---

[5] As stated previously, these factors include: "1) [plaintiff] is a member of a protected group, 2) [plaintiff] was subject to an adverse employment decision, 3) [plaintiff] was qualified for the position, and 4) [plaintiff] was replaced by a person outside of the protected class." *Grosjean*, 349 F.3d at 335 (quoting *Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 342 (6th Cir. 1997)).
[6] The Court notes that Webb does not deny, or respond in any fashion, to Defendants' assertion that Webb's replacement is eight years younger than her.

"significant" enough to provide an inference of discrimination. *Harman*, No. 5:12-CV-00159-TBR, 2014 WL 3513202, at *7 (W.D. Ky. July 15, 2014) (citing *Scola*, 557 F. App'x at 467) (Russell, J.). As in *Harman*, Webb presents no additional evidence of "age animus." Therefore, the Court finds that the eight year difference in age between Webb and her replacement, without more, is not sufficient to establish age discrimination.

V. **Legitimate, Non-discriminatory Reason for Non-renewal of Webb's Contract**

As stated above, under *McDonnell Douglas*, if the plaintiff establishes a prima facie case of discrimination, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its action. 411 U.S. at 802. Assuming it does so, the burden shifts back to the plaintiff to demonstrate the defendant's proffered reason is merely pretext for unlawful discrimination. *Id*. Defendants argue that even if Webb established a prima facie case for any of the actions listed above, it still provided a legitimate non-discriminatory reason for not renewing her contract. Specifically, Defendants state that Webb's contract was not renewed due to insubordinate conduct and conflicts with co-workers and supervisors. [*Id*. at 22; R. 16-2 at 4.] Defendants support this allegation with a declaration from Spraggs in which he recites two verbal altercations with instructors during training sessions in July and August of 2014, a verbal altercation with another bus driver in the fall of 2014, and the incident with Spraggs on May 14, 2015. [R. 16-2 at 2-3; R. 16-1 at 22-23.] Webb never responded with an argument that this reason was merely pretext for unlawful discrimination. [R. 16-1 at 21.]Therefore, even if Webb established a prima facie case for any of the above actions, summary judgment would still be granted in favor of Defendants because Webb failed to demonstrate that Defendants' legitimate, nondiscriminatory reasons for its action, i.e., insubordination and conflicts with other employees, [R. 16-2 at 4], were merely pretext for unlawful discrimination. *See Kline*, 128 F.3d at 346-47 ("When a plaintiff fails to factually challenge the reasons offered by a defendant, the plaintiff has

15

failed to prove pretext and judgment for the defendant is warranted because the plaintiff has failed to fulfill the allocation of burdens outlined in *McDonnell Douglas* and *Burdine*.").[7]

### VI. Webb's Request for Further Discovery

Webb requests that the Court deny Defendants' Motion for Summary Judgment until she may "conduct discovery of her own." [R. 24 at 7.] The Court notes that Webb had ample opportunity to conduct discovery. The original scheduling order of October 21, 2016, at which point Webb was represented by counsel, ordered discovery to be complete on May 5, 2017. [R. 8 at 1.] Webb was later granted three extensions of time, [R. 19; R. 21; R. 25], to file a Response to Defendants' Motion for Summary Judgment. Furthermore, as highlighted by Defendants, Webb fails to show "by affidavit or declaration that, for specific reasons, [she] cannot present facts essential to justify [her] opposition" as required by Federal Rule of Civil Procedure 56(d). FED. R. CIV. PRO. 56(d). Thus, the Court denies Webb's request for the Court to deny summary judgment so Webb may conduct further discovery.

### CONCLUSION

For the reasons stated herein, Defendants' Motion for summary Judgment, [R. 16], is **GRANTED**. The Court will enter a separate Order and Judgment consistent with this Memorandum Opinion.

cc: Counsel of Record

---

[7] Webb mentioned in her pro se complaint that she was discriminated against because of her gender, in addition to race and age. [R. 1-1 at 2.] Defendants did not list gender discrimination as one of Webb's claims in its Motion for Summary Judgment. Yet, in her Response, Webb stated: "As has been chronicled in the Defendant's Motion, said allegations include discrimination based on race and age, wrongful discharge, hostile work environment and retaliation." [R. 24 at 1-2.] As neither party discusses a claim for gender discrimination, the Court will not consider it here.